**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 16, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))
No. 05-60226

)))))))))))))))))))))))))))

BENEDICTA MBENG,

Petitioner,

versus

ALBERTO R. GONZALES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review from the
Board of Immigration Appeals
No. A95 905 995

_____

Before JOLLY, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

Benedicta Mbeng petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision to deny her application for asylum, withholding of removal, and relief under the Convention Against Torture.[1] Because

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 [hereinafter "Convention Against Torture"]. *See* § 2242 of the Foreign Affairs Reform and

substantial evidence supports the IJ's decision, we DENY Mbeng's petition for review.

I.    <u>BACKGROUND</u>

Petitioner Benedicta Mbeng is a forty-nine year-old, native and citizen of Cameroon, who entered the United States on June 6, 2001, as a non-immigrant visitor with authorization to remain until December 5, 2001.  On August 15, 2002, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging Petitioner with removability pursuant to section 237(a)(1)(b) of the Immigration and Nationality Act ("INA").[2]  Through written pleadings and at a hearing, Petitioner conceded that she was removable as charged, but requested asylum under section 208,[3] withholding of removal pursuant to section 241(b)(3)(A),[4] and protection under the Convention Against Torture.

---

Restructuring Act of 1998, Pub. L. No. 105-277, codified at 28 U.S.C. § 1231 (1998).

[2] Section 237(a)(1)(b) provides that "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."  8 U.S.C. § 1227 (a)(1)(B).

[3] Section 208 of the INA discusses asylum generally and is codified at 8 U.S.C. § 1158.

[4] Section 241(b)(3)(A)provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

The Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture are all based on her memberships in the Social Democratic Front ("SDF") and the Southern Cameroon's National Council ("SCNC"). The SDF is the leading opposition party to the Cameroon People's Democratic Movement. The party is committed to ushering democracy, human rights, and social justice into Cameroon. Petitioner joined the SDF in 1991 and was elected ward treasurer in 1998. Petitioner's sister, Ophelia, served as legal advisor in her ward. Petitioner's husband, who still lives in Cameroon, was elected treasurer of his ward in 1992 and retains that office to this day. Petitioner's brother-in-law, who also resides in Cameroon, is the legal advisor to John Fru Ndi, SDF's national chairman.

The SCNC mobilizes opposition to the current political leadership in Cameroon in hopes of eliminating the occurrence of human rights abuses and international law violations. Petitioner joined the SCNC in 1998. At that time, she was a founder of that ward and later elected treasurer.

During her removal proceedings, Petitioner testified that she was subjected to persecution on at least four occasions. First, she testified that on October 28, 1992, at approximately 3:00 A.M., while visiting her sister, Rose, police officers broke into Rose's home. Petitioner testified that the policemen were attempting to find Ophelia's husband. While attempting to locate Ophelia's husband, the officers threw Rose's newborn on a bed and beat and

3

attempted to rape Rose. Petitioner testified that she, too, was beaten after being asked the whereabouts of Ophelia's husband.

The second incident occurred in 1996. Petitioner testified that while attending a meeting of one of her organizations,[5] troops broke into the meeting-room, captured approximately thirty of the ninety members present, and transported them to a police station. There, the members were told to sit on the ground, in the sun, for approximately eight hours because all of the jail cells were full. Petitioner also testified that the detainees were not fed, given anything to drink, or allowed to use the restroom. Additionally, she stated that, at one point, officers soaked the detainees with water from a nearby stream. Petitioner stated that she was released after her sister Ophelia learned of the incident and drove to the police station to negotiate with the officers.

Petitioner testified that her third encounter with officials occurred in December 1999. SCNC members stormed a radio station and declared the independence of Southern Cameroon, which sparked a backlash on SCNC members by the government. The Petitioner's testimony indicates that, out of fear, she and her husband hid in his former village for two months. When they returned to their home, they found that one wall had been partially burned. Petitioner stated that her neighbors told her that the arsonists

---

[5] The record does not clarify whether the meeting was comprised of SDF or SCNC members.

were Francophones.[6]

Finally, on March 16, 2001, after knocking, police entered Petitioner's home and asked for the whereabouts of Rose. The officers also searched the house, took some personal and political documents, slapped Petitioner, and presented her with summons which required her to report to the police station on the following day.

In the United States, Petitioner continues to attend SCNC meetings in Dallas, Texas. The Petitioner told the IJ that she believes the Cameroonian government is aware that she is in the United States and remains politically active because the government has agents in this country. The IJ also noted that Petitioner stated that if she returns to Cameroon she fears being arrested at the airport, and then being persecuted or tortured. However, on cross-examination, Petitioner conceded that her husband, brother-in-law, and her children all reside in Cameroon and are having no problems living there. Additionally, Petitioner admitted that seven of the eight mayors in her city are SDF members.

At the hearing, Petitioner also presented the testimony of her sister, Ophelia. The IJ noted that Ophelia's testimony is largely consistent with Petitioner's, save a discrepancy concerning the whereabouts of Ophelia's husband on the morning of October 28, 1992.

The IJ credited all of Petitioner's testimony but, held that

---

[6] Petitioner is an Anglophone. In Cameroon, Francophones maintain most of the political power and social status.

the facts alleged did not satisfy the standards of eligibility for asylum, withholding of removal, or relief under the Convention Against Torture. The BIA affirmed the IJ's decision without issuing an opinion.

## II. <u>STANDARD OF REVIEW</u>

Although we ordinarily review decisions made by the BIA, because the BIA affirmed without opinion, the IJ's decision became the final agency determination for purposes of this appeal. *Soadjede v. Ashcroft*, 324 F.3d 830, 831-32 (5th Cir. 2003). "We use the substantial evidence standard to review the IJ's factual conclusion that an alien is not eligible for asylum," *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005), withholding of removal, *Zamora-Morel v. INS*, 905 F.2d 833, 838 (5th Cir. 1990), and relief under the Convention Against Torture, *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 353 (5th Cir. 2002). Under this standard, we will not disturb factual findings of the BIA "unless we find not only that the evidence supports a contrary conclusion, but that the evidence *compels* it." *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994); *see also* 8 U.S.C. § 1252(b)(4)(B). "[I]t is the factfinder's duty to make determinations based on the credibility of the witnesses." *Zhao*, 404 F.3d at 306 (quoting *Chun v. INS*, 40 F.3d at 78)(alteration in original). Consequently, we give great deference to an IJ's findings concerning a witness's credibility. *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). "We cannot substitute our judgment

6

for that of the BIA or IJ with respect to the credibility of the witnesses or ultimate factual findings based on credibility determinations." *Chun*, 40 F.3d at 78.

## III. DISCUSSION

### A. Substantial Evidence Supports the IJ's Decision Denying Petitioner's Application for Asylum

Petitioner argues that the IJ failed to consider all of the evidence in favor of granting relief and mischaracterized the evidence weighing against granting the requested relief.

Pursuant to 8 U.S.C. § 1158(a), the Attorney General enjoys authority to grant asylum to any alien who qualifies as a refugee under Section 1101(a)(42)(A) of the INA.[7] Therefore, the alien must demonstrate that she has been persecuted or has a well-founded fear of persecution on account of one of the factors listed in 1101(a)(42)(A).[8] Although the INA does not define *persecution*, we have described it as "[t]he infliction of suffering or harm, under

_____

[7] The statute defines a "refugee" as:
> any person ... who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ....

8 U.S.C. § 1101(a)(42)(A).

[8] However, we emphasize that because the decision to grant or deny asylum is within the IJ's bailiwick, the fact that the alien qualifies as a refugee under the statute does not automatically entitle her to asylum. *Zhao*, 404 F.3d at 306.

government sanction, upon persons who differ in a way regarded as offensive (*e.g.*, race, religion, political opinion, etc.), in a manner condemned by civilized governments." *Abdel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996)(quoting *Matter of Laipenieks*, 18 I & N Dec. 433, 456-57 (BIA 1983)).

The IJ found that there was no evidence that rose to the level of past persecution and that Petitioner's credited testimony was legally insufficient to establish a well-founded fear of future persecution. The IJ did not question Petitioner's veracity but stated that she failed to satisfy the standards of eligibility for the relief requested. The fact that the IJ did not doubt Petitioner's testimony is significant because we must accept as true all the facts to which she testified. *See Zhao*, 404 F.3d at 306. Hence, the question here is merely one of legal sufficiency of the facts alleged. *Id.*

### 1. Petitioner Did Not Suffer Past Persecution

First, we must consider whether Petitioner suffered past persecution. Her testimony focuses on four specific incidents. The IJ, however, properly found that none of the incidents rise to "persecution" based on her political opinion as delineated by this Court.

While Petitioner was beaten in 1992, she was not the target of the government's inquiry. Petitioner merely happened to be at her sister's home while government officials came to look for her

8

brother-in-law. The second incident, Petitioner's detainment for eight hours, was not persecution based on her political beliefs because Petitioner provided no testimony as to why she was detained, no charges were brought against her, she was not convicted of any crime, and she was ultimately released after eight hours. Moreover, the fact that Petitioner was slapped and had some political and personal documents confiscated by police when she was unable to tell them the location of her sister was not persecution based on her political beliefs, because the officers were searching for Rose, the Petitioner's sister, not the Petitioner. Finally, the fact that a wall in Petitioner's home was burned after she had been away for over two months does not indicate past persecution, especially in light of the fact that the Petitioner cannot present any meaningful evidence as to who burned the wall or why it was ignited. Hence, none of the incidents described by Petitioner compels us to reach a contrary conclusion to the one made by the IJ.

## 2. Petitioner Failed to Establish a Well-Founded Fear of Future Persecution

To establish a well-founded fear of future persecution, an alien must demonstrate "a subjective fear of persecution, and that fear must be objectively reasonable." *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th Cir. 2004)(quoting *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 445 (5th Cir. 2001)). To meet this burden, an alien can either satisfy the standard articulated in Section 208.13(b)(2) or demonstrate that she would be singled out for persecution. *See*

9

*Zhao*, 404 F.3d at 307.

Section 208.13(b)(2) has two prongs. The alien need not provide evidence that she would be singled out for persecution, if:

> (A) [She] establishes that there is a pattern or practice in ... her country ... of persecution of a group of persons similarly situated ... on account of race, religion, nationality, membership in a particular social group, or political opinion; and
> (B) [She] establishes ... her own inclusion in, and identification with, such group of persons such that [her] fear of persecution upon return is reasonable.

8 C.F.R. § 208.13(b)(2)(iii)(A)-(B).

Meeting the standard requiring an alien to demonstrate that she would be singled out for persecution "does not require [the alien] to demonstrate that [s]he *will* be persecuted on returning to the [designated country]." *Zhao*, 404 F.3d at 307. Rather, it requires her to show that there is a *reasonable degree* of certainty that her return there would be intolerable. *See Eduard*, 379 F.3d at 189.

We apply the reasonableness inquiry to both the "singled out" standard and the prongs of Section 208.13(b)(2). *Zhao*, 404 F.3d at 307.

> To establish the objective reasonableness of a well-founded fear of future persecution, the alien must prove that (1) he possesses a belief or characteristic a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and, (4) the persecutor has the inclination to punish the alien.

10

*Id.* (quoting *Eduard*, 379 F.3d at 191).  Finally, the applicant need not prove that the government was actually aware of her beliefs and activities as long as the government could easily become aware of such.  *Id.* at 308.

There is substantial evidence to support the IJ's finding that Petitioner failed to establish a well-founded fear of future persecution.  In light of the four factors considered when assessing reasonableness, Petitioner fails to demonstrate that the Cameroonian government has the inclination to punish her based on her political beliefs and activities.  Hence, Petitioner's allegation that there was a pattern or practice of persecution and that she might be singled out for persecution are both unreasonable.  Both the SDF and SCNC have hundreds of thousands of members who participate in political activity without incident or persecution.  Moreover, as Petitioner testified, seven of the eight mayors in her city are SDF members.  Furthermore, the IJ noted, without referring to the two-prong test, that Petitioner conceded that her husband and brother-in-law both reside in Cameroon without any problems.[9]

B.    **Substantial Evidence Supports the IJ's Denial of Mbeng's Application for Withholding of Removal**

_____

[9] The record even reflects that Petitioner's husband successfully held a government job while involved with the SDF and SCNC.  As previously mentioned, Mbeng's brother-in-law holds a much more prominent role in SDF than the Petitioner.

11

Petitioner also argues that the IJ applied an incorrect legal standard, and that the evidence compels a different finding of fact with regard to her request for withholding of removal.[10]  In light of our finding that substantial evidence supports the IJ's decision with regard to Petitioner's application for asylum, we need not address this issue.  *See Girma v. INS*, 283 F.3d 664, 666-67 (5th Cir. 2002)("The level of proof required to satisfy the requirements for withholding of deportation is more stringent than for asylum purposes.").[11]

**C.    Substantial Evidence Supports the IJ's Denial of Mbeng's Application for Relief under the Convention Against Torture**

---

[10] While a grant of asylum permits an alien to remain in this country,  a withholding of removal forbids the alien's removal to the persecuting country.  *See* INA §§ 208 & 241(b)(3), codified at 8 U.S.C. §§ 1158, 1231(b)(3).  Although a grant of asylum is within the agency's discretion, a restriction on removal is granted to qualified aliens as a matter of right.  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987).  Additionally, "[u]nlike asylum, withholding of removal does not require a showing that the petitioner has a subjective fear of persecution."  *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005)(citing *Guevara Flores v. INS*, 786 F.2d 1242, 1250 (5th Cir. 1986)).  "[T]he alien need only demonstrate a 'clear probability' of persecution if returned to [her] home country."  *Id.* (citing *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994)).

[11] Because the IIRIRA changed the language of immigration orders, orders of deportation and orders of exclusion are both now referred to as "orders of removal." *See* IIRIRA § 309(d)(2), 110 Stat. 3009 (1996) ( "[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.").  Therefore, we use the words "removal" and "deportation" interchangeably.

Petitioner also argues that the evidence compels a different finding of fact with regard to her request for relief pursuant to the Convention Against Torture.  She contends that if she returns to Cameroon she fears being arrested at the airport and tortured not only because of her past affiliation with the SDF and SCNC, but also because of her continued participation in the organizations.

> Claims based on the Convention Against Torture differ from claims of asylum and withholding of removal because alleged mistreatment need not involve "one of the five categories of race, religion, nationality, membership in a particular social group or political opinion" and because proof of torture, not simply persecution, is required.  To obtain relief, an applicant must show that it is "*more likely than not" that he would be tortured* if returned to his home country.

*Zhang v. Gonzales*, 432 F.3d 339, 344-45 (5th Cir. 2005). (citations omitted)(emphasis added).

The Federal Register defines *torture* as:

> any act by which severe pain or suffering ... is intentionally inflicted on a person ... for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

To determine whether relief pursuant to the Convention Against Torture is appropriate, the IJ should consider:

> (i) Evidence of past torture inflicted upon the applicant;

13

> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

The IJ did not reach this issue because he concluded that because Petitioner failed to meet the lower burden with regard to her application for asylum, it followed that she would fail to satisfy the higher burdens for withholding of removal and relief pursuant to the Convention Against Torture. *See Dika v. Ashcroft*, 85 F. App'x 374, 375 (5th Cir. 2004)("The burden of proof for withholding of removal under the Immigration and Nationality Act and under the Convention Against Torture is a higher standard than asylum. Failure to satisfy the less demanding asylum standard is, *a fortiori*, a failure to demonstrate eligibility for withholding of removal."). However, we will still analyze this claim separately because Petitioner need only prove torture–not persecution based on one of the five enumerated categories. *See Zhang*, 432 F.3d at 345.

The IJ's decision is supported by substantial evidence. While the 1992 beating might constitute past torture for purposes of the Convention, Petitioner fails to demonstrate that it is more likely than not that she will be tortured if she returns to Cameroon. Moreover, the existence of this evidence alone does not compel us to disturb the IJ's factfinding. The long time span  between the

incidents discussed at the hearing suggests that the government is not likely to torture Petitioner.  Moreover, as previously noted, both the SDF and SCNC have a multitude of members, including Petitioner's own relatives, who participate in political activities without incident or persecution.  Hence, the IJ's denial of Mbeng's application for relief pursuant to the Convention Against Torture is supported by substantial evidence.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the IJ's decision to deny Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture proceedings.  Thus we DENY Mbeng's petition for review.