# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 3, 2023

Lyle W. Cayce
Clerk

No. 21-60281

Lodrick Tsamoh Fiengoh,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A213 327 857

Before Elrod, Haynes, and Willett, *Circuit Judges*.

Per Curiam:*

Lodrick Fiengoh ("Fiengoh") petitions for review of the Board of Immigration Appeals's ("BIA") final order upholding the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. For the following reasons, we DENY the petition for review.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60281

## I.    Background

Fiengoh, a native and citizen of Cameroon, alleges that he faces political persecution due to his membership and activities in the Cameroon Teachers Trade Union ("CATTU") and the Southern Cameroons National Council ("SCNC").[1]  Specifically, Fiengoh contends that he was repeatedly detained, arrested, and severely beaten following his participation in CATTU and SCNC protests in 2016 and 2017.  Fiengoh alleges that after these arrests, he was apprehended by the military when it raided an SCNC meeting he was attending.  He escaped custody, but he subsequently learned from the quarter head of his village that there was an outstanding warrant for his arrest.  Shortly thereafter, the military came to his home and beat his father and brother.  When Fiengoh's family refused to disclose his location, military personnel shot his brother and raped his sister in front of his father.

Fiengoh fled Cameroon, and on November 4, 2019, he presented himself at a port of entry in Laredo, Texas.  After conceding removability, he sought relief in the form of asylum, withholding of removal, and protection under CAT.  On November 14, 2019, an asylum officer conducted a telephonic credible fear interview ("CFI") of Fiengoh.  At the start of the interview, the officer explicitly asked Fiengoh to identify his "best language of understanding," and he replied, "English."  Accordingly, the interview was conducted in English without an interpreter.  At the end of the interview,

---

[1] Fiengoh contends that he is an Anglophone (an English speaker), which is a minority group in Cameroon—Francophones (French speakers) are the majority.  *See Mbeng v. Gonzales*, 174 F. App'x 188, 191 n.6 (5th Cir. 2006) (per curiam).  The CATTU is a trade union comprised of Anglophones serving as teachers in Cameroon.  The SCNC is a political organization that advocates for the Anglophone Southern Cameroons' independence from the largely Francophone Cameroon.

No. 21-60281

Fiengoh confirmed that he understood all of the officer's questions and that the summary of the interview was correct.

Following a merits hearing, an IJ issued a written decision denying Fiengoh's requests for relief. The IJ cited, among other issues, purported inconsistencies between Fiengoh's statements and other written statements in the record. The IJ further found that Fiengoh's corroborating evidence and affidavits failed to rehabilitate his credibility because they lacked indicia of reliability.

On appeal, the BIA affirmed. First, it found no "clear error" in the IJ's adverse credibility findings based on three purported discrepancies: (1) Fiengoh asserted in his testimony and his CFI that he learned about the arrest warrant from the village quarter head, but the quarter head's affidavit indicated that he told Fiengoh's father about the arrest warrant; (2) Fiengoh stated in his asylum application and his CFI that he was just an SCNC "supporter," but the SCNC Secretary General's affidavit stated that Fiengoh was a "coordinator"; and (3) Fiengoh failed to mention in his asylum application and CFI that the military beat his father in the same incident where his sister was raped and his brother was shot.[2]

The BIA further upheld the IJ's finding that Fiengoh's explanations and other evidence failed to rehabilitate his discredited testimony. The BIA rejected Fiengoh's argument that some of these inconsistencies could be attributed to language barriers.[3] It also concluded that Fiengoh's "voluminous" corroborating evidence was largely unreliable or "cast further

---

[2] The BIA declined to "consider . . . some of the other discrepancies or implausibilities noted by the [IJ]," since the three identified discrepancies "fully support[ed] an adverse credibility determination."

[3] Fiengoh asserts that his "best language" is Pidgin English, which markedly differs from the English used in the border interview, CFI, and IJ proceedings.

doubt on the veracity of [his] testimony." The BIA pointed to the "identical linguistic idiosyncrasies" in Fiengoh's supporting affidavits, the fact that his birth certificate—needed to verify employment—was issued in 2017 and did not indicate the date of the original document, and indicia that the arrest warrant was forged. Fiengoh timely petitioned for review.

## II.    Jurisdiction & Standard of Review

We generally only have authority to review the BIA's decision. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). However, where, as here, "the BIA determined the IJ's adverse credibility finding was not clearly erroneous," we also have "authority to review those portions of the IJ's decision that impacted the BIA." *Nkenglefac v. Garland*, 34 F.4th 422, 427 (5th Cir. 2022).

We review factual findings, such as credibility determinations, under the substantial evidence standard, which requires the petitioner to show "that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang*, 569 F.3d at 537. Under this deferential standard of review, "we will affirm [credibility determinations] even if we may have reached a different conclusion" where the record does not compel a different result. *Singh v. Garland*, 20 F.4th 1049, 1054 (5th Cir. 2021) (quotation omitted).

## III.    Discussion

Fiengoh contends that the IJ's adverse credibility finding, which was fatal to his application for relief from removal, is not supported by substantial evidence because (1) there was no true inconsistency between his testimony and other aspects of the record, and, alternatively, (2) corroborating evidence rehabilitated any inconsistencies or lack of credibility. For the following reasons, we disagree.

## A.     Asylum & Withholding of Removal

To qualify for asylum, Fiengoh must establish "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). To determine whether he has met this burden, "the trier of fact may weigh . . . credible testimony along with other evidence of record." *Id.* § 1158(b)(1)(B)(ii). "There is no presumption of credibility"—rather, credibility is determined by considering the "totality of the circumstances[] and all relevant factors." *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (quotation omitted). The IJ may infer from *any* singular inconsistency or omission—regardless of its weight or relative importance—that *all* of the testimony should be disregarded. *Arulnanthy v. Garland*, 17 F.4th 586, 596 (5th Cir. 2021).

Here, the BIA pointed to two inconsistencies and one omission by Fiengoh that were identified by the IJ. First, the IJ noted that Fiengoh stated in his asylum application that he was a "sympathizer and supporter" of the SCNC, and in his CFI he claimed that his role entailed distributing posters and flyers. However, the General Secretary of the SCNC's affidavit contended that Fiengoh was a "coordinator" in the organization. When asked about this discrepancy, Fiengoh simply responded, "I don't know why [the General Secretary] did that."

This discrepancy is sufficient to support the IJ's credibility determination. Indeed, we have previously sustained a credibility finding based on an inconsistency regarding a petitioner's role in a political organization. *See Singh v. Sessions*, 880 F.3d 220, 223, 226 (5th Cir. 2018). The fact that Fiengoh's own statements about his role in the SCNC were consistent does not obviate the issue. It was reasonable for the IJ to conclude that a leader of the SCNC would accurately testify as to Fiengoh's role in the

organization. Moreover, the term "coordinator" is not synonymous with "sympathizer and supporter," and these roles plainly entail different levels of responsibility and risk. Accordingly, we do not believe the evidence compels a contrary conclusion regarding Fiengoh's credibility.

Additionally, the BIA and IJ relied on an inconsistency in Fiengoh's description of the military's attack on his family members. In his CFI and asylum application, Fiengoh stated that his sister was raped and his brother was killed in the incident. Moreover, at the end of Fiengoh's CFI, the officer provided Fiengoh with a summary of the interview and asked if Fiengoh had anything to add, to which he repeated his prior statement that the military raped his sister and shot his brother. However, Fiengoh's father stated in his affidavit that he was also "severely beaten" during the incident. When later asked why he failed to mention his father's beating, Fiengoh attributed the omission to a language barrier. However, this explanation seems questionable, particularly given that Fiengoh (1) explicitly told the officer during the CFI that English was his "best language," (2) confirmed that he understood all of the officer's questions at the end of the CFI, and (3) claims to have taught Geography and Citizenship Education at an English-speaking high school.

Fiengoh also argues that the purported discrepancy regarding how he learned about the outstanding warrant is not a true inconsistency. But even assuming he is correct,[4] each of the other discrepancies alone are sufficient to support the IJ's adverse credibility finding. *Wang*, 569 F.3d at 538 ("[A]n IJ may rely on *any* inconsistency or omission in making an adverse credibility determination." (quotation omitted)).

---

[4] The Government seems to concede this point.

No. 21-60281

Fiengoh's corroborating evidence cannot alter this conclusion because it does not "resolve the inconsistencies that the BIA found so troubling." *Ghotra*, 912 F.3d at 290. Instead, many of Fiengoh's "corroborating" documents contain the "hallmarks of fraud" such as "misspellings, overwriting, incorrect information, and alterations"— *bolstering* the BIA's adverse credibility determination. *Matter of O-M-O*, 28 I. & N. Dec. 191, 194 (BIA 2021) (quotation omitted); *see also Singh v. Wilkinson*, 838 F. App'x 109, 111 (5th Cir. 2021) (per curiam) ("[T]he IJ's concern about the veracity of the letters was substantially reasonable given a report in the record.").[5] For example, the purported arrest warrant contains an illegible date, and the word "state" is misspelled. Further, several affidavits contain "identical" language and other indicia of unreliability. *See Hong Lin v. Holder*, 383 F. App'x 393, 395 (5th Cir. 2010) (per curiam) (upholding an adverse credibility finding based in part on discrepancies between two versions of documents submitted by the petitioner).

In sum, given the inconsistencies, omissions, and unreliable documents, Fiengoh has not demonstrated that the evidence should have "compelled" a factfinder to conclude he was credible. We therefore must defer to the BIA's adverse credibility determination, which precludes asylum relief. *See Wang*, 569 F.3d at 536–37. Further, because withholding of removal "poses a higher bar than the 'well-founded fear' standard for asylum," Fiengoh's failure to carry his burden for asylum also precludes his withholding of removal claim. *Ghotra*, 912 F.3d at 288.

## B.    CAT Relief

---

[5] Although *Singh v. Wilkinson* and related unpublished opinions cited herein "[are] not controlling precedent," they "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

No. 21-60281

CAT claims are "separate from the claims for asylum and withholding of removal and should receive separate analytical attention." *Efe v. Ashcroft*, 293 F.3d 899, 906–07 (5th Cir. 2002). To qualify for CAT relief, the applicant carries the "burden of proof" to establish "that it is more likely than not" that he "would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). An adverse credibility finding alone is insufficient to prevent CAT relief where the applicant offers "non-testimonial evidence that could independently establish his entitlement to CAT relief." *Arulnanthy*, 17 F.4th at 598; *see* 8 C.F.R. § 208.16(c)(3). But Fiengoh offered only the same unreliable evidence discussed above to support his claim for CAT relief. Accordingly, he fails to carry his burden, and his CAT claim likewise fails. *See Ghotra*, 912 F.3d at 290.

## IV.　Conclusion

For the reasons set forth above, we DENY the petition for review.