[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2005
THOMAS K. KAHN
CLERK

_____

Nos. 03-10144 & 04-12400

_____

BIA No. A75-362-530

BADRIYA AXMED,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of an Order of the
Board of Immigration Appeals

_____

**(September 29, 2005)**

Before BIRCH, CARNES and FAY, Circuit Judges.

FAY, Circuit Judge:

Badriya Axmed petitions this court to review the Immigration Judge's denial of asylum, and the Board of Immigration Appeals' denial of her motion to reopen.[1] Regarding the first issue, substantial evidence supports the Immigration Judge's finding that Axmed was not credible and therefore not eligible for asylum. Axmed failed to establish that the Immigration Judge was biased, and the Board of Immigration Appeals did not violate her constitutional right by affirming the Immigration Judge's decision without an opinion. With regard to the second issue, the Board of Immigration Appeals did not abuse its discretion by denying Axmed's motion to reopen because her motion was filed untimely. We affirm.

## I. Procedural Background

On September 4, 1997, Badriya Axmed, a native citizen of Somalia, entered the United States without a valid immigration visa or any other valid entry document. On February 3, 1998, the Immigration and Naturalization Service (hereafter referred to as "INS") issued Axmed a notice to appear, charging her with removability under INA § 237(a)(1)(A), codified at 8 U.S.C. § 1227(a)(1)(A), as an alien immigrant not in possession of a valid, unexpired entry document. Axmed

[1]This court consolidated Axmed's petition on appeal. Appeal No. 03-10144 is the petition for review of the Board of Immigration Appeals affirmance of the Immigration Judge's final removal order. Appeal No. 04-12400 is the petition for review of the Board of Immigration Appeals denial of Axmed's motion to reopen.

applied for asylum and withholding of removal, alleging past persecution based on her membership in a particular tribal group in Somalia. In her application for asylum Axmed states the relevant facts as to why her application should be granted.

## II. Relevant Factual Background

Axmed testified that she is a member of the Midgan tribe and could be identified as a Midgan in any part of Somalia. The Midgan clan was one of several groups that were termed "outcastes" because, traditionally, they could only marry among themselves, and other clans considered them to be ritually polluted. The U.S. State Department Somalia Country Report on Human Rights Practices for 1997 (hereafter referred to as "1997 Report") asserted that serious interclan fighting continued in Mogadishu and Kismayo. This fighting was prompted by the militia members who supported Mogadishu leader Hussein Aideed. Any member of the Midgan group that supported the former president, Mohamed Siad Barre, was vulnerable to retaliation.

Axmed stated that her father was murdered by the Hawiye clan because he used to work for the military during the Siad Barre regime. She testified that she did not actually witness her father's murder, but people in town told her about his death, and she viewed his dead body in the street. She claims that members of the

Hawiye militia shot down her father in the street while walking home from work. Axmed further testified that Hawiye militia searched for people who worked for the previous government, and they killed her father because they knew that he had worked for the government during the Siad Barre regime.

In Addition, Axmed testified that in 1991, while living in Mogadishu, seven Hawiye clan members broke down her door and entered her house. She claimed that she believed the Hawiye men came to her house because they knew her father had worked for the military and they wanted to take things from her home. She stated that she, her children and her mother were able to hide in a backroom while the men searched her house. She testified that while hiding, she was able to see the Hawiye men take her brother out to the street and kill him. She testified further that the Hawiye men raped her sister and eventually took her away with them. Axmed stated that she did nothing because she feared for her life and the life of her remaining family members.

Finally, Axmed alleges that on route to Kenya, Hawiye units stopped her family three times in order to determine if they had been affiliated with the Siad Barre government. According to the testimony of Axmed, she was approached by Hawiye militia and asked what clan she belonged to.  She explained to them that she was Hawiye. She claimed that one of the members knew her father and was

4

certain that she was a member of the Midgan clan. After hearing that she was not Hawiye, one of the men hit Axmed in the back with a shotgun. The man then grabbed her by the hair, knocked her head into a wall, and slashed her leg with the bayonet on his gun. She testified that she fell down and was losing a lot of blood. She then claims that the man might have raped her, but she was not sure because of her head injury and loss of blood.

Axmed petitions for review of the Immigration Judge's (hereafter referred to as "IJ") removal order, which became a final agency determination when the Board of Immigration Appeals (hereafter referred to as "BIA") affirmed the IJ's decision without an opinion.[2] Axmed argues the IJ made the following errors: (1) denying her asylum application based on a determination of her credibility; (2) not accepting the fact that Axmed proved she was persecuted for being a member of the Midgan clan; (3) finding her allegations were implausible; and (4) in failing to rule that Axmed is entitled to withholding of removal because her life and freedom would be threatened in Somalia.

In addition, Axmed argues that the BIA abused its discretion by denying her motion to reopen because an application for asylum may be introduced at any time if the conditions in the applicant's country have changed.

---

[2]The BIA did this pursuant to 8 C.F.R. § 3.1(e)(4), which has been renumbered to 8 C.F.R. § 1003.1(e)(4) effective February 28, 2003.

## III. Standard of Review

The IJ's factual determinations are reviewed under the substantial evidence test. Al Najjar v. Ashcroft, 257 F.3d 1262,1283-84 (11th Cir. 2001). This court is obligated to affirm, if the IJ's decision is supported by reasonable, substantial, and probative evidence on the record. Najjar, 257 F.3d at 1283-84. To the extent that the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir.2001). This court reviews the BIA's denial of Axmed's motion to reopen for an abuse of discretion. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338,1340 (11th Cir.2001).

## IV. Substantial Evidence Supports the IJ's Determination

Axmed contends that the IJ's credibility determination was not supported by substantial evidence. She asserts that the IJ erred in basing her credibility on minor inconsistences in her testimony, and that it would be impossible for her to provide evidence for every claim she testified to. Although slight deference is given to an applicant who has no way of supporting certain testimony, the general rule is that an asylum applicant carries the burden of proving "refugee"[3] status and credibility

---

[3]According to 8 U.S.C. § 1101(a)(42)(A) a "refugee" is: "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

6

throughout the immigration proceeding. Al Najjar, 257 F.3d 1262 at 1284.

Moreover, the Immigration Judge is in the best position to weigh the inconsistencies and credibility of an applicant, and this court will not second guess his judgement unless it was not supported by substantial evidence. See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir.2004)(declaring when the IJ enumerates an applicant's inconsistences and is supported by the record,[this court] will not substitute [its] judgement for that of the IJ with respect to its credibility findings'; see also Sarvia-Quintanilla v. Immigration and Naturalization Serv., 767 F.2d 1387, 1395 (9th Cir. 1985)(stating that an Immigration Judge alone is in the position to observe an alien's tone and demeanor, to explore inconsistences in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence). In the instant case, the IJ simply did not believe Axmed's testimony.

In the case at bar, Axmed clearly falls into the definition of a "refugee." Axmed alleges that because she is a member of the Midgan social tribe, she will face persecution if ordered to return to Somalia. In order to establish asylum eligibility, Axmed must, with specific and credible evidence, establish (1) past persecution on account of one on the statutorily listed factors mentioned above, or

---

membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A) (2005).

(2) have a "well founded-fear" that the above factors will cause future persecution. Al Najjar, 257 F.3d at 1287. If the IJ makes a determination of lack of credibility, this court will have great reluctance to rule otherwise since the one observing any witness is in the best position to make a determination.

From the record it appears that the IJ carefully considered all the evidence throughout the hearing and concluded that Axmed was not credible. The IJ concluded that Axmed was not a member of the Midgan clan, as she was not able to explain any distinguishing features of the Midgan people. She was questioned extensively on the topic of her being a member of the Midgan tribe, yet Axmed was only able to provide basic information about the culture. Furthermore, her testimony that people throughout Somalia knew she was Midgan was vague an unpersuasive.

Axmed failed to rebut the forensic report which called into question the authenticity of her Somalian identity card, an identity card that the IJ determined to be fraudulent.[4] Axmed testified that she carried the identity card between her body and her clothes for several years before traveling to the United States. However, when examined by the forensic team, the analyst determined the card to be clean

---

[4]The use of fraudulent documents to establish an essential element of an asylum claim impacts the heart of the asylum claim and indicates the alien's lack of credibility. See Akinmade v. Immigration and Naturalization Service, 196 F.3d 951, 955-56 (9th Cir.1999).

and the paper to be stiff. In addition, there were discrepancies concerning the identity card's authenticity. The analyst determined that portions of the seal were hand drawn, and the word Mogadishu was spelled incorrectly.

Furthermore, the IJ disbelieved her story that seven Hawiye men broke into her house, killed her brother and raped her sister. The IJ found it implausible that seven men, who were breaking into this small house to steal valuables, would not discover Axmed, her two children, or her mother hiding in the back of this house. In addition, the IJ found that Axmed's allegation that she was beaten and raped for being associated with the Midgan tribe was an utter fabrication.

Finally, the IJ disbelieved her story that she was able to enter the United States without any documentation or without being asked any administrative questions. The IJ found that Axmed's story that she flew into New York with a man that provided her with a Somalian identification card to be highly unlikely. Axmed testified that she was given an identification card, and once she arrived safely in New York, the man took it back. In addition, Axmed testified that she never directly spoke to any official when entering the United States.

Axmed argues that this court should remand her case to the BIA in order for it to make a credibility determination. See Immigration and Naturalization Serv. v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002)(stating

9

that if the [11th Circuit] concludes that the IJ's credibility determination was not supported by substantial evidence, it should remand the case to the BIA to determine whether the applicant's asylum claim would succeed on the merits). Although Axmed cites correct law for this proposition, it simply is not applicable. The IJ's finding of lack of credibility is supported by substantial evidence.

## V. Frivolous Application

Axmed argues that the IJ erred in finding that her application was frivolous, however, she failed to exhaust this argument before the BIA. Consequently, this court is without jurisdiction to review the claim. See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1)[5]; see also Fernandez-Bernal v. Att'y Gen. of the United States, 257 F.3d 1304, 1317 (11th Cir.2001).

## VI. Due Process

Axmed contends that the hearing before the IJ was fundamentally unfair, and in violation of her due process rights because the IJ acted with bias and hostility towards her. Specifically, Axmed contends that the IJ was antagonistic

[5] This section reads in pertinent part, "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).

10

towards her during the hearing, that this particular IJ has the lowest rate of asylum grants in the country, and that she was not allowed to use her own interpreter. All three arguments are without merit. In order for Axmed to establish a due process violation, she must show that she was deprived of liberty without due process of law, and that error caused her substantial prejudice. See Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976); see also Ibrahim v. U.S. Immigration and Naturalization Srv., 821 F.2d 1547, 1550 (11th Cir.1987).

Regarding the IJ's alleged bias toward granting asylum, not only did Axmed fail to present any evidence supporting this allegation, she failed to exhaust this issue before the BIA. Therefore this issue is waived. With regards to the finding of a frivolous application, there is nothing in the record to support such a claim. The IJ was legally obligated to warn Axmed of the consequences of filing a frivolous asylum application. See INA § 208(d)(4), 8 U.S.C. § 1158(d)(4)(A)(providing that "the Attorney General shall . . . advise the alien . . . of the consequences . . . of knowingly filing a frivolous application for asylum. The claim that inadequate translation services resulted in a due process violation is equally without merit. The record reflects that the IJ allowed an interpreter of Axmed's choice to sit with her and her counsel and allowed Axmed to object to any translation she felt was erroneous. Furthermore, the few translations that Axmed argues are inaccurate did

11

not affect the outcome of her case.

## VII.  BIA's Affirmance without Opinion.

Axmed asserts that BIA erred in affirming the IJ's's decision without opinion. The BIA's decision to affirm without opinion is within the absolute discretion of the agency. A single BIA member may affirm an IJ's decision without opinion if the BIA member determines that the decision under review was correct, any errors were harmless and nonmaterial, the issues on appeal are squarely controlled by existing precedent, and the issues are not so substantial as to warrant a written decision. See 8 C.F.R. § 1003.1(e)(4).  In addition, this court has held that an affirmance without a full written opinion does not violate the applicant's due process rights. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283(11th Cir.2003)(holding the BIA's summary affirmance of the alien's removal did not violate any due process rights because under the Immigration and Naturalization Service's regulations, no entitlement to a full opinion by the BIA existed). The ruling by the BIA is proper and in accord with existing precedent.

## VIII. BIA's Denial of Motion to Reopen

Axmed contends that the BIA abused its discretion by denying her motion to reopen her asylum application. She argues that her case should be reopened and remanded to allow her to apply for a withholding of removal based upon factors that did not exist at the time of her hearing. Axmed asserts that the birth of her American daughter and the implementation of the United Nations Convention Against Torture (hereafter referred to as "CAT") creates a material change in her circumstances. She contends that her motion to reopen should be granted so that she can provide evidence that her youngest daughter will be a victim of "female genital mutilation." Axmed also wants to "stand in the shoes" of her youngest daughter's possible persecution in order to allow her to stay in this country.

Although this court realizes how cruel and inhumane female genital mutilation is, Axmed failed to timely file her motion to reopen, and asylum is only available to aliens who are personally at risk. An alien may file one motion to reopen, which shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material. INA § 240(c)(7)(A), 8 U.S.C. § 1229a(c)(7)(A). A motion to reopen must be filed within 90 days of the entry of a final administrative order of removal. The BIA did not abuse its discretion by denying Axmed's motion to reopen, as it was

filed in November 2003, more than 90 days after the BIA affirmed the IJ's final removal order in December 2002.

The only relevant exception to this rule is that there is no time limit for filing a motion to reopen an application for asylum based on material and previously unavailable evidence of changed country conditions. INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii). Axmed contends that the possibility of her youngest daughter having to undergo female genital mutilation is sufficient changed circumstances for her case to be reopened.

With regard to this issue, this court has not yet decided a case involving a derivative asylum claim based upon an alien's fear that her American-born child may be forced to undergo female genital mutilation. However, the Seventh Circuit and the Ninth Circuit have decided similar issues. See Oforji v. Ashcroft, 354 F.3d 609, 618 (7th Cir. 2003); see also Azanor v. Ashcroft, 364 F.3d 1013, 1021-22 (9th Cir. 2004). In both Oforji and Azanor, the courts held that an alien parent who has no legal standing to remain in the United States, may not establish a derivative claim for asylum by pointing to the potential hardship of their American-born children. According to the record, Axmed's youngest daughter was born in the United States, making her an American citizen. There is no evidence that if Axmed was sent back to Somalia that her daughter would be forced to travel to that

14

country. Consequently, we find no abuse of discretion.

## IX. Conclusion

Substantial evidence supports the IJ's determination that Axmed was not credible and therefore not eligible for asylum. The IJ did not violate Axmed's due process rights, because there was no evidence that the IJ was biased or hostile towards Axmed, and the IJ was obligated according to INA § 208(d)(4), 8 U.S.C. § 1158(d)(4) to warn Axmed of the consequences of filing a frivolous application. As to the summary affirmance, according to 8 C.F.R. § 1003.1(e)(4) and Mendoza, the BIA is within its discretionary power to affirm a case without a full written opnion. With regard to the BIA's denial of the motion to reopen, the motion was untimely filed, as it was filed more than 90 after the BIA's affirmance of the IJ's removal order. In additon, Axmed failed to demonstrate a prima facie case for relief, because an application for asylum may not be reopened for the fear of her daughters potential genital mutilation.  For all of these reasons we affirm.

 **AFFIRMED**.