# Matter of R-K-K-, Respondent

*Decided September 8, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Significant similarities between statements submitted by applicants in different proceedings can be considered by an Immigration Judge in making an adverse credibility determination if certain procedural steps are undertaken to preserve the fairness of the proceedings.

(2) When relying on inter-proceeding similarities, the Immigration Judge should give the applicant meaningful notice of the similarities and a reasonable opportunity to explain them prior to making a credibility determination that is based on the totality of the circumstances.

FOR RESPONDENT: Inna Lipkin, Esquire, Redwood City, California

BEFORE: Board Panel: PAULEY and WENDTLAND, Board Members; O'HERRON, Temporary Board Member.

PAULEY, Board Member:

In a decision dated February 11, 2013, an Immigration Judge denied the respondent's applications for asylum and withholding of removal and his request for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of India. On May 11, 2011, within 1 year of entering the United States, he filed an application for asylum with the Department of Homeland Security ("DHS"). On July 1, 2011, the DHS initiated removal proceedings against the respondent, charging him with removability as an alien who is present in the United States without being admitted or paroled. The respondent has conceded that he is removable as charged.

The Immigration Judge denied the respondent's applications for relief based on an adverse credibility determination. In this regard, the Immigration Judge noted that the form, substance, and tone of the respondent's asylum application and an associated declaration were substantially similar, and in some regards identical, to an asylum application previously filed by the respondent's brother in a different proceeding. After giving the respondent an opportunity to respond, the Immigration Judge found that his explanations for the similarities were insufficient to show that he had not copied significant parts of his brother's claim. The Immigration Judge further held that the respondent's additional corroborating evidence was inadequate to establish his claim.[1]

## II. ISSUE

The primary issue in this case is whether, in making an adverse credibility determination, an Immigration Judge can consider significant similarities between statements submitted by applicants in different proceedings. We conclude that such consideration is permissible and outline the procedural framework under which an Immigration Judge should address such inter-proceeding similarities.

## III. ANALYSIS

The respondent's applications are governed by the amendments brought about by the passage of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302. Pursuant to these provisions, he bears the burden to prove that he is eligible for any relief sought and, where applicable, that it should be granted in the exercise of discretion. Section 240(c)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(4) (2012); 8 C.F.R. § 1240.8(d) (2015).

In adjudicating such applications, a trier of fact should take a commonsense approach to determining credibility, considering the totality of the circumstances, including the applicant's demeanor and any inconsistencies in testimony or instances of implausibility. *See* section 208(b)(1)(B)(iii) of the Act, 8 U.S.C. § 1158(b)(1)(B)(iii) (2012); *see also Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005) (recognizing that an Immigration Judge "must be allowed to exercise common sense in rejecting a petitioner's testimony"); *Matter of J-Y-C-*, 24 I&N Dec. 260, 262 (BIA

---

[1] We review the Immigration Judge's findings of fact, including those relating to credibility, to determine if they are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2015). We review de novo all questions of law, discretion, and judgment. 8 C.F.R. § 1003.1(d)(3)(ii).

2007). Section 208(b)(1)(B)(ii) of the Act provides that although the "testimony of the applicant may be sufficient to sustain the applicant's burden [of proof] without corroboration," the applicant must demonstrate that his testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee."

### A. Framework for Adjudicating Cases With Inter-Proceeding Similarities

Neither the Board nor the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has issued a precedent decision addressing the situation presented here. However, the Second Circuit considered this issue in *Mei Chai Ye v. U.S. Department of Justice*, 489 F.3d 517 (2d Cir. 2007), and has approved of the reliance on inter-proceeding similarities in credibility determinations.

In this case, the Immigration Judge relied on the Second Circuit's approach in making his adverse credibility finding based on substantial similarities between the respondent's asylum application and that of his brother. We find that this approach provides a useful framework for adjudicating cases with inter-proceeding similarities.[2]

*Mei Chai Ye* involved an asylum claim related to China's family planning policies. After the alien testified, the Immigration Judge noted that the testimony "strikingly resembled" that of an alien in a different case. *Id*. at 520. The DHS produced a redacted version of the application from that other case. After reviewing the documents, the Immigration Judge concluded that they were so "similar in language and grammatical structure" that the number of similarities between them was too great to be the result of an accident. *Id*. at 522. The Immigration Judge provided continuances for the alien to address this issue but ultimately rejected her explanations and entered an adverse credibility determination.

In denying the alien's petition for review, the Second Circuit approved of the procedural safeguards that were meticulously followed by the Immigration Judge to avoid making a mistaken finding of falsity. *Id*. at 524–25. However, the court stated that it did "not purport to promulgate and impose a specific set of procedural safeguards which [Immigration Judges] must follow in all respects and in all cases." *Id*. at 526.

---

[2]   We are not aware of any circuit court that had rejected the Second Circuit's approach. *See Nadeem v. Holder*, 599 F.3d 869, 873 (8th Cir. 2010) (citing *Mei Chai Ye* in a case where an alien submitted letters that contained "similar language, grammar, and spelling errors"); *see also Dehonzai v. Holder*, 650 F.3d 1, 13−15 (1st Cir. 2011) (Thompson, J., dissenting) (stating that *Mei Chai Ye* is "helpful" and noting its emphasis on the "specific procedural protections" that should be followed).

As the Second Circuit noted, cases such as these present a difficult issue. *Id*. at 519. On the one hand, some inter-proceeding similarities are so significant that, when left unexplained, they cannot be ignored. *See id*. at 524. On the other hand, innocent similarities may be mistakenly interpreted as evidence of falsity. We therefore conclude that Immigration Judges may rely on inter-proceeding similarities as part of an adverse credibility determination, but we must also review such determinations with "an especially cautious eye." *See id*. at 519–20.

To preserve the fairness of the proceedings, we adopt the following three-part framework for Immigration Judges to use when relying on inter-proceeding similarities as part of an adverse credibility determination. First, the Immigration Judge should give the applicant meaningful notice of the similarities that are considered to be significant. Second, the Immigration Judge should give the applicant a reasonable opportunity to explain the similarities. Finally, the Immigration Judge should consider the totality of the circumstances in making a credibility determination. Each of these steps must be done on the record in a manner that will allow the Board and any reviewing court to ensure that the procedures have been followed. This framework will permit Immigration Judges to draw reasonable inferences of falsity from inter-proceeding similarities while establishing procedural safeguards to protect faultless applicants.

In the first step of our framework, the Immigration Judge should identify the similarities between the documents or other evidence under consideration and notify the applicant of the similarities that need to be explained.[3] The Immigration Judge should provide the applicant with copies of the statements or documents in question and explain how the similarities appear to undermine the applicant's credibility. Identifying all the similarities clearly on the record will make it easier for the Immigration Judge to ascertain the extent and nature of similarities in the case and will facilitate any appellate review of the credibility finding.

Identification of a substantial number of instances where the same or remarkably similar language is used to describe the same kind of incident or encounter would tend to raise credibility questions that should be further addressed. This is particularly true where there is additional material in

---

[3] This should be done in a manner consistent with the confidentiality concerns of the regulation at 8 C.F.R. § 1208.6 (2015). In that regard, 8 C.F.R. § 1208.6(a) provides:

> Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 1208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 1208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

both statements that "wouldn't necessarily have to be mentioned but [was] mentioned." *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d at 521 (quoting the Immigration Judge). But the presence of even a relatively few similarities could raise the same credibility concerns if, in the context of an overall asylum claim, distinct language was used or unique factual circumstances were repeated without reasonable explanation. *See, e.g.*, *Dehonzai v. Holder*, 650 F.3d 1, 8 (1st Cir. 2011) (rejecting the applicant's explanation that language describing a beating with a bundle of wires attached to a tennis ball, which was "virtually identical" to his cousin's statement, was "mere coincidence").

The second step of our framework provides the applicant with an opportunity to explain the similarities. If appropriate, the Immigration Judge may continue the hearing to allow the applicant to obtain evidence in support of his or her explanation. We can envision scenarios in which an applicant will offer a reasonable explanation or credible evidence to dispel doubts about the authenticity or reliability of the initial evidence. As the Second Circuit has noted, a reviewing court can more confidently defer to an Immigration Judge who has considered

> (a) whether there is a meaningful likelihood that [the inter-proceeding similarities] resulted from mere coincidence, (b) whether it is plausible that different asylum applicants inserted truthful information into a standardized template or, for illiteracy reasons, conveyed it to a scrivener tied to an unchanging style; (c) whether the same translator converted valid accounts into a peculiarly similar story; and (d) whether there is a likelihood that the petitioner was an innocent "plagiaree."

*Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d at 526–27.

As a final step in the credibility determination, the Immigration Judge should assess all of the alien's evidence for reliability to determine whether, considering the totality of the circumstances, it adequately explains the inter-proceeding similarities. *See Matter of J-Y-C-*, 24 I&N Dec. at 262.

### B. Respondent's Claim

The respondent's asylum claim is based primarily on two alleged incidents of arrest and abuse at the hands of the police in his home State of Uttar Pradesh, India. According to the respondent, in both of the incidents, which occurred in April and May 2010, he was arrested and taken from his home to a police station, where he was accused of being connected to Kashmiri militants and aiding Muslim terrorists at his place of business. The respondent claimed that in the first incident, which occurred at 8 p.m., he was forced to undress and was beaten on his buttocks and back with

sticks and was released when his father paid a 350,000 rupee bribe. During the second arrest, he was undressed, beaten on his back and buttocks with batons, and held by his feet and arms while two sets of officers pulled his legs and arms apart. The respondent stated that during this incident, which occurred at 9 p.m., he refused to sign a blank sheet of paper. Again, he alleged that he was released upon payment of a bribe by his father. The respondent stated that he sought medical attention on both occasions and was never charged with a crime or fingerprinted.

The DHS raised the issue of similarities between the respondent's declaration and the asylum application of his brother, who was granted asylum in 2009.[4] The brother's claim related to two arrests in 2004 and 2006, during which he was accused of aiding Muslim terrorists. His application stated that the arrests occurred at the same time in the evening as the respondent's and that he was similarly beaten on his back and buttocks after having his clothes removed. The respondent's brother was allegedly arrested the second time with his wife, so his application included claims that they were both mistreated while in detention. He stated that during his second arrest, he was allegedly told to sign a blank form, but he refused. The brother also claimed that his legs were pulled apart by officers and that his release was secured when his father paid a bribe.

The respondent's application used similar language to describe events that were almost identical to those claimed by his brother.[5] Both brothers' declarations included the same spelling and grammatical errors. In referring to the harm he suffered, the respondent used the pronouns "we" and "us," as did his brother, whose claim, however, also related to his wife. Because of these similarities between the respondent's asylum declaration and the statement submitted by his brother, both the DHS and the Immigration Judge questioned the respondent in this regard. Among other

---

[4] This case comports with the confidentiality requirements in 8 C.F.R. § 1208.6 because the respondent's brother waived his confidentiality protections. The brother's unredacted declaration was part of the record below, so the parties and the Immigration Judge were able to fully compare the two documents. The respondent was permitted to use the separate declaration, including information about the transcriber, in attempting to demonstrate that the inter-proceeding similarities did not undermine his credibility. We do not address what procedural protections are sufficient to offer an adequate opportunity to explain similarities between asylum applications absent a confidentiality waiver.

[5] For example, in regard to the first arrest, each brother stated that "the impact of this incident is still on my mind" and that whenever he remembered it, he would "start shivering." Both applications identically alleged that the police "again falsely blame that I have still connection with the Muslim" militants. Each brother also stated, "I was very much astonished on their allegation and I told them I am not aware" of the terrorists. They added, "They did not beleive [sic] me and they told me that they had record of my last police arrest."

things, he was asked to explain why the experiences of the two brothers were so similar, why identical language was used by each brother to explain what happened and how those events made them feel, why each declaration had the same syntax and spelling irregularities, and why the respondent used plural pronouns in his statement.

The respondent's explanation was that he and his brother were brought up in similar ways and experienced mistreatment in a similar place. He also claimed that the similarities in their applications could be attributable to the fact that they used the same transcriber, who may have inserted his own "flair for words and syntax." The respondent stated that he provided a verbal account of his experiences in India to the transcriber, who then wrote his statements out and read them back over the course of two meetings. The respondent denied ever seeing his brother's asylum application prior to submitting his own.

The respondent's brother testified that he had used the same transcriber to prepare his asylum application and had introduced the respondent to him. The brother initially stated that the transcriber used a written version of events prepared in Hindi by the respondent to complete the respondent's application and that this written document was then discarded. At a subsequent hearing, the brother retracted this testimony, stating that he was confused and that the transcriber actually prepared the respondent's application from a verbal account only. He added that, in any case, he was not privy to the transcriber's conversations with the respondent because he was not sitting close enough to hear what was said at the time.[6]

The Immigration Judge granted the respondent approximately 3 months to locate the transcriber and present his testimony or a statement describing the preparation of the application. However, the respondent did not produce the transcriber to testify. Even when the respondent appeared at the continued hearing without the transcriber's testimony, the Immigration Judge indicated that he would be willing to reopen the record if the respondent obtained additional evidence bearing on the preparation of his application. The respondent did not do so.

In his decision, the Immigration Judge found that the similarities between the respondent's claim and that of his brother indicated that they were not created independently of one another. Citing specific examples, he observed that both applications shared identical wording, typographical and spelling errors, and spacing irregularities in describing the same events.

---

[6] The Immigration Judge found that the respondent's brother's testimony regarding his confusion was not credible. We find no clear error in this determination. We note in particular that the brother's claim that he thought the questions referred to the manner in which he prepared his *own* statement is belied by the transcript, which includes his clear testimony that the respondent wrote out a statement in Hindi for the transcriber to use.

In addition, the Immigration Judge noted that the respondent's statement used plural pronouns, as did his brother's declaration, which also related to his wife.

Having identified the inter-proceeding similarities that he believed negatively affected the respondent's credibility, the Immigration Judge gave the respondent a reasonable opportunity to explain them. In response, the respondent argued only that it was reasonable for his claim to be similar to his brother's since they come from the same location, they were accused of the same offenses, and they used the same transcriber.

Considering the totality of the circumstances, the Immigration Judge determined that the respondent lacked credibility. In addition to the similarities in the applications, the Immigration Judge pointed to the conflicting accounts of how the respondent's application was prepared and his brother's incredible explanation for the inconsistency. He also noted the absence of testimony from the transcriber and the lack of any other persuasive evidence to establish that the respondent's claim was credible.

We conclude that the Immigration Judge's adverse credibility determination is not clearly erroneous. The record fully supports his finding that the nearly identical wording in the brothers' accounts raises substantial concerns about the respondent's credibility. The Immigration Judge identified similarities in the declarations that were too numerous and obvious to be coincidental. Both declarations use the same distinctive descriptions of the alleged events, using an almost identical narrative. Each misspells several words in exactly the same way. The brothers both claimed they were arrested at the same times in the evening, although the respondent stated that his arrests occurred several years later. The respondent's declaration has spacing gaps that suggest that words included in the brother's declaration were simply deleted.

Moreover, the Immigration Judge did not clearly err in determining that the respondent's explanation did not sufficiently account for the similarities in the brothers' declarations. The respondent's assertion that their nearly verbatim statements are the result of their common backgrounds and experiences is not persuasive. Nor is his claim that the similarities were created by the transcriber. Also, the respondent did not account for the fact that his declaration contains plural pronouns in a narrative describing a scenario that he testified happened only to him. Furthermore, the brothers gave inconsistent explanations of the transcriber's preparation of the declarations and their encounters with him.

The Immigration Judge considered the totality of the circumstances in making his adverse credibility determination. Not only did he detail the numerous inter-proceeding similarities in the case, he also thoroughly analyzed the respondent's explanations for them and outlined his reasons

for finding them to be unpersuasive.  Although the Immigration Judge gave the respondent an opportunity to provide the transcriber's testimony, the respondent did not produce any additional evidence.  Under these circumstances, there is no clear error in the Immigration Judge's determination that the respondent did not present a credible claim for relief.

The respondent also did not meet his burden of proof through independent corroborating evidence.  *See* section 208(b)(1)(B)(ii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. at 263. Without credible testimony, and in the absence of other reliable evidence sufficient to prove his claims, the respondent cannot satisfy the burden of proof that is applicable to asylum or the more stringent burden required for withholding of removal.  *See Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

The respondent argues that the Immigration Judge erred in not giving dispositive weight to his documentary evidence, including a medical document, letters from his father and brother-in-law, and copies of his driver's license and election commission card.  However, the Immigration Judge did not find this evidence insufficient merely because the respondent's documents were unauthenticated and submitted by witnesses who are unavailable for cross-examination.  Rather, he determined that the conclusory and generic nature of the evidence was insufficient to independently establish that the respondent had a well-founded fear of persecution.[7]  The Immigration Judge did not clearly err in finding that although the respondent's evidence of country conditions in India reflects that human rights abuses by the Government or its agents were reported, particularly in certain areas of conflict, the evidence did not reflect a pattern or practice of persecution of suspected associates of Kashmiri militants outside of those areas.

Finally, we affirm the Immigration Judge's conclusion that the respondent has not established eligibility for relief under the Convention Against Torture.  The respondent did not establish a credible basis to believe that he was detained and mistreated as claimed.  Moreover, the other evidence of record was insufficient to show that it is more likely than not that anyone in India will torture the respondent with the consent or acquiescence of a government official.  *See Ridore v. Holder*, 696 F.3d 907 (9th Cir. 2012).  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

---

[7]   We do not assess whether the above evidence would have sufficiently corroborated the respondent's claim if he had been found credible.