**Vigen Samvelovich MANUKYAN, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

No. 12–71647.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2015.

Filed Nov. 25, 2015.

Areg Kazaryan, Law Offices of Areg Kazaryan, Glendale, CA, for Petitioner.

Chief Counsel ICE, Office of the Chief Counsel Department of Homeland Security, San Francisco, CA, OIL, Anna Nelson, U.S. Department of Justice, Washington, DC, for Respondent.

---

\* The Honorable Vince Chhabria, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The agency also denied Manukyan's applications for withholding of removal and relief

Before: SCHROEDER and FRIEDLAND, Circuit Judges and CHHABRIA,\* District Judge.

MEMORANDUM \*\*

Petitioner Vigen Samvelovich Manukyan, a native of Armenia and citizen of Russia, seeks review of the Board of Immigration Appeals' order affirming the denial of Manukyan's application for asylum.[1] We review for substantial evidence the agency's factual findings, applying the standards governing adverse credibility determinations created by the REAL ID Act. *Shrestha v. Holder*, 590 F.3d 1034, 1039–1040 (9th Cir.2010). "Where, as here, the BIA adopts the IJ's decision while adding its own reasons, we review both decisions." *Siong v. INS*, 376 F.3d 1030, 1036 (9th Cir.2004) (quoting *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000)). We deny the petition for review.

1. Even if *Matter of R–K–K–*, 26 I. & N. Dec. 658 (BIA 2015), applied to Manukyan's petition, and even if the agency did not follow the procedural framework adopted in *Matter of R–K–K* governing how IJs may rely on inter-proceeding similarities when making credibility determinations, substantial evidence supports the adverse credibility determination in this case. As the BIA noted, the IJ identified other "specific and cogent reasons" supporting her adverse credibility determination that were unrelated to the inter-proceeding similarities between Manukyan and his brother Razmik's asylum applications. *Shrestha*, 590 F.3d at 1042.

under the Convention Against Torture. Manukyan does not address either of those claims in his opening brief so he has waived any challenges to those determinations. *Martinez–Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir.1996).

For example, the IJ noted that Manukyan had offered inconsistent testimony and documentary evidence about when he was allegedly attacked and beaten by a group of skinheads. The IJ did not clearly err in considering and rejecting Manukyan's explanations for those inconsistencies. *See Soto–Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir.2009).

The IJ also relied on Manukyan's evasive demeanor and his sudden departure from the hearing when confronted with the inconsistencies between his testimony and his documentary evidence. "[A]n IJ's determination regarding demeanor is given special deference...." *Kin v. Holder*, 595 F.3d 1050, 1056 (9th Cir.2010). The IJ was further entitled to give the psychiatrist's letter explaining that Manukyan suffered from PTSD, and that this could have explained his behavior at the hearing, relatively little weight because the letter, which was hearsay, did not describe how the diagnosis was reached. *See Singh v. Holder*, 753 F.3d 826, 835 (9th Cir.2014).

It is true that the IJ clearly erred in some of her factual findings, including, as the BIA noted, her conclusion that Manukyan had changed his testimony regarding the date of the skinheads incident at the second hearing. But we cannot say, in light of the IJ's and BIA's reliance on the inconsistencies regarding the skinheads incident and on Manukyan's demeanor, that "any reasonable adjudicator would be compelled to conclude" that the adverse credibility determination was incorrect. *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir.2014) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**2.** We review for substantial evidence the agency's determination that there is no pattern or practice of persecution against Armenians in Russia. *See Lolong v. Gonzales*, 484 F.3d 1173, 1180 (9th Cir.2007) (en banc).

"[T]he record in [this] case does not compel the conclusion that there exists a pattern or practice of persecution against" Armenians in Russia. *Wakkary v. Holder*, 558 F.3d 1049, 1061 (9th Cir.2009). The 2009 Department of State report does note that "[r]eports by refugees, NGOs, and the Press suggest[ ] a pattern of police beatings, arrests, and extortion of persons with dark skin or who appeared to be of Caucasus ... ethnicity." However, we cannot say that "any reasonable adjudicator would be compelled to conclude," 8 U.S.C. § 1252(b)(4)(B), that these incidents rise to the level of a "pattern or practice of persecution" within the meaning of 8 C.F.R. § 208.13(b)(2)(iii). *See Kotasz v. INS*, 31 F.3d 847, 852 (9th Cir.1994) (describing pattern or practice as "extreme" and "systematic[ ] persecut[ion]"). "[A]lthough it is clear that a certain portion of ... individuals [of Caucasus ethnicity] suffer treatment that rises to the level of persecution, the record does not establish that the situation in [Russia] is similar to the patterns or practices of persecution described in our prior case law" such that we are compelled to conclude the agency's determination was wrong. *Wakkary*, 558 F.3d at 1061.

**Petition DENIED.**