# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2021

Lyle W. Cayce
Clerk

No. 19-60937

DALJINDER SINGH,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A215 908 418

Before OWEN, *Chief Judge*, and CLEMENT and DUNCAN, *Circuit Judges*.
STUART KYLE DUNCAN, *Circuit Judge*:

Daljinder Singh, a native and citizen of India, seeks review of a decision of the Board of Immigration Appeals affirming the denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. A motions panel granted Singh a stay pending merits review. *See Singh v. Garland*, 4 F.4th 322 (5th Cir. 2021), *opinion withdrawn*, 855 F. App'x 958 (5th Cir. 2021). While we have misgivings about the immigration judge's reliance on inter-proceeding evidence under *Matter of R-K-K-*, 26 I&N Dec. 658 (BIA 2015), we conclude that the judge's credibility findings were otherwise supported by substantial evidence and

No. 19-60937

that Singh's due process claims based on the judge's alleged bias lack merit. We therefore deny the petition.

## I.

Singh was caught illegally crossing the United States border from Mexico on October 24, 2018, and charged with removability. At a 2019 asylum hearing before an immigration judge ("IJ"), Singh presented evidence and testimony that he fled India from political persecution for his involvement in the Shiromani Akali Dal Armistar Mann Party (the "Mann party"). During the summer, according to Singh, members of an opposing political faction, the Bharatiya Janata Party ("BJP"), twice assaulted him, leaving him hospitalized. Police mocked Singh's attempt to report the first assault and threatened to file a false drug charge against him. Singh relocated briefly to his sister's home outside his village before fleeing India for the United States. Since his apprehension, Singh's father has been attacked by BJP members in search of Singh.

The IJ denied the application, concluding Singh was not credible and alternatively had not proven eligibility for asylum. The credibility finding turned, in part, on the IJ's observation that "since October 2019 . . . there has been an emerging pattern and an eerie similarity" in claims by asylum applicants from India. *See Singh*, 4 F.4th at 324–25. In response, Singh's counsel tried to explain why such similarities would arise in asylum cases involving Indians, but the IJ found the explanation insufficient. *Id.* at 325. Singh appealed to the Board of Immigration Appeals ("BIA"), arguing primarily that the IJ was biased and predisposed to reject his application. He also sought a remand to consider new evidence supporting his asylum claims. *See* 8 C.F.R. § 1003.2(c)(4). The BIA found substantial evidence supported the IJ's conclusions, rejected Singh's due process claims, and denied Singh's motion to remand. Singh petitions for review.

No. 19-60937

## II.

This court reviews decisions of the BIA and considers the IJ's ruling to the extent it affects the BIA's decision. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). "We review legal conclusions *de novo* and factual findings for substantial evidence." *Pena Oseguera v. Barr*, 936 F.3d 249, 250 (5th Cir. 2019) (citation omitted). The substantial evidence standard requires reversal only when "we find not only that the evidence supports a contrary conclusion, but that the evidence compels it." *Iruegas-Valdez v. Yates*, 846 F.3d 806, 810 (5th Cir. 2017) (cleaned up). We review the BIA's denial of a motion to remand under "a highly deferential abuse-of-discretion standard." *Milat v. Holder*, 755 F.3d 354, 365 (5th Cir. 2014) (cleaned up). We will reverse only where the BIA's decision was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005) (citation omitted).

## III.

### A.

Singh attacks the IJ's adverse credibility finding principally by arguing the IJ misapplied the BIA's guidance for inter-proceeding evidence. *See Matter of R-K-K-*, 26 I&N Dec. at 661–62 (outlining three-part standard). We afford great deference to an IJ's credibility determinations. *Wang v. Holder*, 569 F.3d 531, 538–39 (5th Cir. 2009); *see* 8 U.S.C. § 1158(b)(1)(B)(iii) (enumerating permissible grounds for credibility findings). Even minor inconsistencies between an applicant's testimony and prior statements may form the basis of a negative credibility finding. *Wang*, 569 F.3d at 538–39 ("In a nutshell: details matter, and the story's periphery may expose a liar." (quoting *Mitondo v. Mukasey*, 523 F.3d 784, 788–89 (7th Cir. 2008))). "Neither an IJ nor the BIA is required to accept a petitioner's explanation

3

for [the] plain inconsistencies in her story." *Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017) (citation and internal quotation marks omitted). Even if we doubt an IJ's credibility findings, we will not disturb them if "the outcome would not differ had the IJ not considered [the challenged evidence]." *Avelar-Oliva v. Barr*, 954 F.3d 757, 767 (5th Cir. 2020) (citation omitted).

Here the IJ based her adverse credibility finding on two distinct grounds: (1) inconsistencies between Singh's testimony and the record evidence and (2) similarities between Singh's narrative and those of other similarly situated applicants. The second ground raises the issue of so-called "inter-proceeding" evidence, which a sister circuit has described as "striking similarities between affidavits that were submitted *separately* by ostensibly unrelated asylum applicants—as evidence of incredibility." *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 519 (2d Cir. 2007). In *Matter of R-K-K-*, the BIA set out prerequisites for relying on such evidence. An IJ must, on the record, (1) give the applicant "meaningful notice of the [significant] similarities between the documents or other evidence under consideration," (2) give the applicant "a reasonable opportunity to explain the similarities," and (3) "consider the totality of the circumstances in making a credibility determination." 26 I&N Dec. at 661. These safeguards protect an applicant's right to due process. *See Mei Chai Ye*, 489 F.3d at 524 (observing "inter-proceeding cases call for caution" given due process concerns); *see also, e.g.*, *Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018) ("The Fifth Amendment's Due Process Clause protects individuals in removal proceedings.") (citing *Manzano-Garcia v. Gonzales*, 413 F.3d 462, 470 (5th Cir. 2005)).

The IJ's application of *Matter of R-K-K-* was questionable. She expressed concern about "an emerging pattern and an eerie similarity" between Singh's statements and the applications of a "wave of respondents from India," including their political affiliation, narratives about two BJP

attacks and police acquiescence, and methods of fleeing India. But to rely on inter-proceeding evidence, *Matter of R-K-K-* demands more than the IJ's recalling an "emerging pattern" from unspecified prior matters. That hardly gives the applicant "meaningful" notice or a "reasonable" chance to rebut the implication that his claims have been cut-and-pasted from someone else's affidavit. *See* 26 I&N Dec. at 661. Our sister circuits take the same view.[1] It would not have been difficult to point to specific prior cases where the claims were virtually identical to Singh's. If the IJ's credibility finding turned on nothing more than "eerie similarities" from nameless prior cases, Singh's due process claim might have purchase under *Matter of R-K-K-*.

But there was more to the IJ's credibility finding. Aside from the inter-proceeding evidence, the finding was supported by other substantial evidence from this proceeding. As the IJ noted, Singh's medical certificate allegedly corroborating his attack is dated December 15, 2018, after his arrival in the United States in October 2018. Singh also testified that his father and another individual took him to the hospital after an attack, but a letter from that individual says only Singh's father took him to the hospital. These inconsistencies, which the IJ noted, accurately reflect the record. *See Morales*, 860 F.3d at 817. Singh tries to explain them by pointing out that they were just "a minor omission" and a "misunderstanding" clarified by testimony. But he fails to show why the record "compels" the conclusion that the IJ should have found him credible. *Iruegas-Valdez*, 846 F.3d at 810; *see also Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006) ("[W]here the [IJ's] credibility determinations are supported by the record, we will affirm them

---

[1] *See, e.g.*, *Wang v. Lynch*, 824 F.3d 587, 591 (6th Cir. 2016) (noting "the similar applications were [both] in the record"); *Dehonzai v. Holder*, 650 F.3d 1, 8 (1st Cir. 2011) (providing copies of Amnesty International report with language virtually identical to the applicant's description of his mistreatment); *Mei Chai Ye*, 489 F.3d at 525 (notifying applicant of similarities to another application and providing her with annotated copies).

even if we may have reached a different conclusion . . . ." (citations omitted)). The IJ's adverse credibility determination is thus supported by substantial evidence quite apart from the inter-proceeding evidence.

## B.

Singh also argues that his due process rights were violated by the IJ's alleged bias. He contends that (1) during the hearing the IJ "smirked and literally rolled her eyes in disbelief" at counsel's comparing Singh to a similar applicant who received asylum and (2) the IJ has a near 100% denial rate in asylum cases. We reject both contentions as supporting a due process claim.

Even if Singh's accusations are true, the IJ's purported facial expressions, lack of patience with counsel, and appearance of incredulity do not prove bias. *See Wang*, 569 F.3d at 540 (recognizing "displays of temper" like "expressions of impatience, dissatisfaction, annoyance and even anger" are not evidence of bias (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))). Our precedent likewise forecloses any reliance on incorrect legal conclusions as evidence of partiality. *Id.* (recognizing "opinions formed by the judge . . . do not constitute a basis for bias . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible" (quoting *Liteky*, 510 U.S. at 555)).

We also reject Singh's contention that the IJ's "denial rate" in asylum cases supports finding a denial of due process. An asylum applicant may attempt to show an IJ's "personal, rather than judicial, bias stemming from an 'extrajudicial' source" by citing the IJ's specific statements in a current or past asylum proceeding. *Matter of Exame*, 18 I&N Dec. 303, 306 (BIA 1982); *see also Wang*, 569 F.3d at 540 (an IJ's "[r]emarks" may support a bias finding "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible") (quoting *Liteky*, 510 U.S. at 555–56). In those instances, an applicant may move to disqualify the IJ. *Cf.* 28 U.S.C.

§ 455; 8 C.F.R. § 1240.1(b). Singh concedes that was not done here. O.A. Rec. at 13:50–15:55. He merely asserts that "a 100% denial rate over at least nine years must be interpreted as a pre-disposition to deny [Singh]'s and all cases."

That theory lacks any basis in our precedent. An IJ's "denial rate" is no more than a crude summation of the IJ's prior rulings. This raw statistic cannot of itself show bias in a particular case. *See, e.g.*, *Axmed v. U.S. Att'y Gen.*, 145 F. App'x 669, 674 (11th Cir. 2005) (summarily rejecting argument that bias was proved because "this particular IJ has the lowest rate of asylum grants in the country"). Singh himself conceded as much. *See* O.A. Rec. at 14:50–15:19 (conceding denial rate alone is insufficient to show bias). Even in a particular case, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Wang*, 569 F.3d at 540 (citing *Liteky*, 510 U.S. at 555). Singh's novel theory invites us to take a long step beyond that settled proposition—not merely basing bias on actual rulings from *this* case but on the naked results of *other* cases. We decline. That spares us the arbitrary task of drawing the line over which an IJ's denial rate might tip into bias.

On its own terms, Singh's bias argument fails. He points to no material evidence of the IJ's "hostility due to extrajudicial sources" or "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Wang*, 569 F.3d at 540–41. We find no basis for disturbing the BIA's rejection of Singh's due process claim.

## C.

Finally, Singh argues the BIA abused its discretion by denying his motion to remand to consider new evidence. We disagree. The BIA considered the newly proffered evidence and found (correctly) that it had no bearing on the inconsistencies in Singh's testimony supporting the IJ's

No. 19-60937

adverse credibility determination. Singh fails to explain how the BIA's denying remand was an abuse of discretion. *See Milat*, 755 F.3d at 365.

## IV.

The petition for review is DENIED.